# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ROBERT L. JONES,

        Petitioner,

EARNIE MOORE, Warden,
  Lebanon Correctional Institution,

        Respondent.

Case No. 3:13-cv-085

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

# REPORT AND RECOMMENDATIONS

This habeas corpus case brought under 28 U.S.C. § 2254 is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

Petitioner was convicted in the Montgomery County Common Pleas Court of aggravated robbery, aggravated burglary, kidnapping, and having weapons while under a disability, with firearm specifications on all counts but the last (Petition, Doc. No. 2, PageID 21, ¶ 5). He was sentenced to eighteen years confinement which he is presently serving in Respondent's custody. *Id.* at ¶ 3.

Petitioner pleads three Grounds for Relief:

> **Ground One:** Ineffective Assistance of Trial Counsel (6th Amendment)

1

**Supporting Facts:** Trial counsel failed to try weapons under disability count to the bench which deprive [sic] petitioner of Fair Trial. Trial counsel failed to object to Prosecutor's Misconduct. Trial counsel failed to file a timely motion to suppress.

**Ground Two:** Convictions Are Against the Manifest Weight of the Evidence (6th Amendment)

**Supporting Facts:** Victim-eyewitness testimony was inconsistant [sic] and unreliable, not crediable [sic]. All evidence not reliable or crediable [sic] regarding latent fingerprint evidence, expert testimony, and cell phone evidence. No evidence connects petitioner in any way to this issue, only allegations.

**Ground Three:** Ineffective Assistance of Appellate Counsel

**Supporting Facts*:*** Appellate counsel failed to challenge the sufficiency of the evidence. The prosecution failed to prove every element of the charges against the petitioner in re; to all charges especially the aggravated robbery, aggravated burglary, weapons under disability, 3-year firearm specification.

(Petition, Doc. No. 2, PageID 25- 28.)

### Procedural History

Petitioner was indicted by the Montgomery County grand jury in 2010 and tried and convicted in November of that year. He was sentenced on December 14, 2010, and appealed to the Montgomery County (Second District) Court of Appeals which affirmed the conviction on November 18, 2011. *State v. Johnson*, 2011 Ohio 5966, 2011 Ohio App. LEXIS 4880 (Ohio App. 2nd Dist. Nov. 18, 2011). The Ohio Supreme Court declined to exercise jurisdiction over a further appeal (Petition, Doc. No. 2, PageID 22, ¶ 9(g)). Petitioner further sought relief by applying to the court of appeals to reopen his direct appeal (Petition, Doc. No. 2, PageID 23, ¶ 11). That court denied the application to reopen. *State v. Jones*, Case No. 24409 (Ohio App. 2nd

Dist. Apr. 23, 2012)(unreported, copy available on the website of the Montgomery County Clerk of Courts). The Ohio Supreme Court again declined further review (Petition, Doc. No. 2, PageID 28). Petitioner does not assert that he has ever filed a petition for post-conviction relief under Ohio Revised Code § 2953.21.

## Analysis

### Ground One: Ineffective Assistance of Trial Counsel

In his First Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel in three respects (1) failure to try the weapons under disability charge to the bench rather than to a jury; (2) failure to object to prosecutorial misconduct; and (3) failure to file a timely motion to suppress.

The first sub-claim was part of Petitioner's first assignment of error on direct appeal. The court of appeals decided that claim as follows:

> **A. The Ineffective Assistance of Counsel Claim**
>
> **[*P10]** When considering a defendant's claim that counsel rendered him ineffective assistance, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland v. Washington* (1984), 466 U.S. 668, 696, 104 S.Ct. 2052, 80 L.Ed.2d 674. The defendant establishes fundamental unfairness with an ineffectiveness claim when he shows both that counsel performed deficiently and that the deficient performance prejudiced the defense. Id. at 688 and 693; accord *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. A reviewing court presumes that counsel's conduct constituted sound trial strategy, a presumption that the defendant must overcome. Id. at 689. To show the requisite prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the

3

trial would have been different." *Bradley*, at paragraph three of the syllabus. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, at 700. Jones contends that counsel's cumulative failures denied him a fair trial. He points to four specific failures.

**[*P11]** Jones first points to counsel's failure to try the weapons-under-a-disability charge separately to the court. As a consequence, says Jones, the jury learned of his prior convictions. It is "[a] recognized concern with trying a weapons under a disability charge to the jury [] that, in a case where a defendant does not testify, the jury would learn about a defendant's prior conviction for the sole reason that the charge was tried before them and not a judge." *State v. Ingram*, Franklin App. No. 06AP-984, 2007 Ohio 7136, at ¶77 (Citation omitted.). Nevertheless, trying the charge to a jury when the defendant does not testify is not per se unreasonable. Id. Courts classify the decision as one of trial strategy. See *Ingram*, at ¶76; *State v. Hill*, Fairfield App. No. 98CA67, 2002 Ohio 227 (responding to the defendant's argument that trial counsel should have tried a weapons-under-disability charge to the trial court, the court said that it "must accord deference to defense counsel's strategic choices made during trial"). One court has recognized that trying the charge to a jury may be a reasonable strategy in light of the fact that "the chance of an acquittal, or even a hung jury, is considerably greater when charges are tried to a jury, rather than a judge." *State v. Love*, Ross App. No. 05CA2838, 2006 Ohio 1824, at ¶49.

**[*P12]** Jones does not point to anything in the record suggesting that counsel's decision to try the weapons-under-disability charge to the jury in this case was unreasonable. We also note that in the unique facts of this case the victim testified that the defendant said he had just gotten out after serving seven years, and the victim also confirmed Jones's identity from a picture on an Ohio Offenders website. From these two pieces of information it would have been apparent to the jury that the defendant had a criminal record. Considering all these factors, Jones has failed to overcome the presumption that counsel's strategy was sound, and he has failed to demonstrate how the result would have been different if the weapons under disability charge was tried to the court.

*State v. Jones,* 2011 Ohio 5966, ¶¶10-12.

When a state court decides on the merits a federal constitutional claim later presented to a

federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

As to the first sub-claim of ineffective assistance of trial counsel, the court of appeals plainly applied the governing federal constitutional standard as elaborated in *Strickland v. Washington, supra*. Ohio courts, as the court of appeals noted, treat the question of whether to try a weapons under disability charge separately to the bench so that the jury will not hear about the prior convictions as a matter of trial strategy. Counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell,* 274 F.3d at 337, 359 (6th Cir. 2001), *quoting Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984).

Moreover, even if this tactical choice were deemed to be unreasonable, the court of appeals' decision shows that Jones cannot demonstrate any prejudice: the victim himself testified that Jones said he had just gotten out of prison after serving seven years, so the jury would have learned of the prior convictions in any event, in words quoted from the Petitioner himself.

The second sub-claim is that trial counsel failed to object to prosecutorial misconduct. The court of appeals also decided this claim as part of the first assignment of error and wrote:

> **[\*P13]** The next two alleged failures by counsel are failures to object to alleged misconduct by the prosecutor during her closing argument and during her cross examination of his alibi witness. But, Jones fails to show a reasonable probability that counsel's objecting to the comment would have changed the outcome of the trial. We address the alibi witness questioning first.

5

**[*P14]** Jones contends that counsel should have objected to two questions that the prosecutor asked his alibi witness, who was also Jones's girlfriend. Jones asserts that the prosecutor's intent was to imply his guilt by suggesting that there was enough evidence to keep him in jail while the case against him was pending. To place the questions in the proper context, we first quote the line of questioning leading up to them:

**[*P15]** "Q* * * On that Easter weekend you said that Robert came over Friday night with you and he stayed with you Saturday.

**[*P16]** "A Yes, ma'am.

**[*P17]** "Q And then he left at about 1:00 on Sunday?

**[*P18]** "A Yes, ma'am.

**[*P19]** "Q Did you ever—when you talked to Mr. Sampson from the Public Defender's office did you write out a written statement for him?

**[*P20]** "A Yes, ma'am.

**[*P21]** "Q And in that written statement you say that you all left that day on Saturday and then came home later that night?

**[*P22]** "A No, ma'am.

**[*P23]** "Q You didn't write that?

**[*P24]** "A No, ma'am.

**[*P25]** "Q That 'I, Keisha Ashby, live at 2030 Cornell Ridge. On Saturday, April the 3rd, about 10:20 Robert L. Jones returned home about 12:00 midnight'?

**[*P26]** "A Yes, ma'am.

**[*P27]** "Q That did happen? He did leave your house?

**[*P28]** "A He didn't leave Saturday.

**[*P29]** "Q He didn't leave Saturday?

**[*P30]** "A No, ma'am." (Tr. 488-489).

6

[*P31] Defense counsel then requests a sidebar where he explains that the likely source of confusion is a misreading of the witness's written statement. On resuming cross examination, the prosecutor continues with a new question:

[*P32] "Q All right. You said that Robert never left on Saturday?

[*P33] "A Yes.

[*P34] "Q Okay. But I think in your written statement you—do you remember writing the statement?

[*P35] "A Yes, ma'am.

[*P36] "Q Okay. In the statement it says, 'On Saturday, April 3rd, 2010, at about * * * 10:30 p.m., Robert L. Jones returned home."

[*P37] "A Yes, ma'am.

[*P38] "Q Okay. Do you remember writing that?

[*P39] "A Yes, ma'am.

[*P40] "Q Okay. 'And then at about 12:00 midnight my boyfriend Robert and I, Keisha, went to bed.'

[*P41] "A Yes, ma'am.

[*P42] "Q 'And we woke up on Sunday.'

[*P43] "A Yes, ma'am.

[*P44] "Q Do you remember writing that?

[*P45] "A Yes, ma'am.

[*P46] "Q So he didn't leave Saturday?

[*P47] "A No." (Tr. 490-491).

[*P48] The prosecutor then asks if it was possible that Jones, without her knowledge, left while they were sleeping. Ashby responds that it was not possible. The prosecutor then begins the line of questioning that contains the two questions at issue here, italicized:

7

**[*P49]** "Q Okay. Now, you are still currently Robert's girlfriend right now?

**[*P50]** "A Yes, ma'am.

**[*P51]** "Q Okay. *And have you seen him since he's been incarcerated on this charge*

**[*P52]** "A Yes, ma'am.

**[*P53]** "Q And have you talked to him on the telephone?

**[*P54]** "A Yes, ma'am.

**[*P55]** "Q All right. Have you talked about this case?

**[*P56]** "A Kind of.

**[*P57]** "Q Kind of?

**[*P58]** "A Yes, ma'am.

**[*P59]** "Q So he know [sic] that you were going to come in here and testify in this particular case in front of this jury?

**[*P60]** "A Yes, ma'am.

**[*P61]** "Q Okay. Would you ever say anything to help him if he was in trouble?

**[*P62]** "A No, ma'am.

**[*P63]** "Q You wouldn't try to help him if he was in trouble?

**[*P64]** "A No.

**[*P65]** "Q Okay. *Do you want to see him get out of jail at this point*

**[*P66]** "A Yes, ma'am." (Emphasis added.) (Tr. 491-492).

**[*P67]** The prosecutor immediately resumes asking Ashby about Jones's whereabouts Saturday evening and Sunday morning:

**[\*P68]** "Q You said that you had talked to Detective Richey the night of that preliminary hearing. He came out and talked to you?

**[\*P69]** "A Yes, ma'am.

**[\*P70]** "Q And he asked you some questions about what was going on?

**[\*P71]** "A Yes, ma'am.

**[\*P72]** "Q Did you tell Detective Richey when you met with him that Robert was with you all day on Easter Sunday?

**[\*P73]** "A No, ma'am.

**[\*P74]** "Q What did you tell Detective Richey?

**[\*P75]** "A He was there the morning of Easter.

**[\*P76]** "Q The morning of Easter?

**[\*P77]** "A Yes, ma'am.

**[\*P78]** "Q Did he ever ask you about the Saturday night?

**[\*P79]** "A No, ma'am.

**[\*P80]** "Q He didn't ask you about that?

**[\*P81]** "A Huh-uh.

**[\*P82]** "Q Did you tell Detective Richey that—even though he didn't ask you about Saturday night, did you say, 'He was with me all night Saturday night and never left'?

**[\*P83]** "A No, ma'am." (Tr. 492-493).

**[\*P84]** The State contends that the purpose of the two questions was to show that Ashby's trial testimony about Jones's whereabouts appears inconsistent because she was trying to help her boyfriend. We agree that, given the context, this purpose more likely prompted the two questions. Moreover the jury heard that the defendant had been arrested when the alibi witness, later in her testimony, volunteered that the defendant had been arrested. (Tr. 495) But the questions could have been better worded to avoid any implication that the defendant was in custody. The prosecutor was

9

allowed to attack Asby's credibility, trying to impeach her, by asking her questions that reveal a motive to misrepresent. See Evid.R. 607(A) (providing that "[t]he credibility of a witness may be attacked") and Evid.R. 616(A) (providing that "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness * * * by examination of the witness"). The fact that the witness communicated with the defendant, specifically about the case, subsequent to the initiation of (as opposed to "incarcerated for") the charges, is inquiry relating to the credibility of the witness. The fact that the witness would like to help the defendant be acquitted (as opposed to "get out of jail") is inquiry into the witness' bias. Therefore, if counsel had objected, it is debatable whether, in the sound discretion of the trial court, the objections would have been sustained.

**[\*P85]** More importantly, assuming the questions were improper, counsel's decision against making an objection would not be per se unreasonable. "The failure to object to error, alone, is not enough to sustain a claim of ineffectiveness. 'Because "[o]bjections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder," competent counsel may reasonably hesitate to object in the jury's presence.'" *State v. Hartman* (2001), 93 Ohio St.3d 274, 296, 2001 Ohio 1580, 754 N.E.2d 1150, quoting *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 1994 Ohio 492, 630 N.E.2d 339 (Internal citation omitted.). Jones does not say what made counsel's decision in this case unreasonable, so its reasonableness is presumed.

**[\*P86]** The second act of alleged prosecutorial misconduct occurred during the prosecutor's closing argument to the jury. Jones contends that counsel should have objected to that part of the closing argument that appealed to the prejudice and sympathy of the jury. [T]he test regarding prosecutorial misconduct in closing arguments is 'whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. Hessler*, 90 Ohio St.3d 108, 125, 2000 Ohio 30, 734 N.E.2d 1237, quoting *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883. "[C]losing remarks must be viewed in their entirety to determine whether the disputed remarks were unfairly prejudicial." *State v. Ross*, Montgomery App. No. 22958, 2010 Ohio 843, at ¶107, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. Here, while assembling the evidence supporting the kidnaping charge, the prosecutor recounted Hicks's testimony that Jones put him in the trunk of a car. Then the prosecutor said:

[*P87] "Imagine for a second what Willie was going through in the trunk of his car, locked in, and he's already been held at gunpoint and he hears that conversation between the Defendant and the accomplices. 'I know what I'm doing. I just did seven years. I'm going to shoot him. Let's shoot him if he doesn't tell us where everything is at.' And then that trunk lid is lifted with that gun pointed at him." (Tr. 504).

[*P88] The State concedes that the prosecutor's argument here was improper, though the State asserts the problem is that the prosecutor invited the jury to speculate on Hicks's experience and thoughts—facts not in evidence, see *State v. Wogenstahl*, 75 Ohio St.3d 344, 357, 1996 Ohio 219, 662 N.E.2d 311 (referring to the prosecutor's invitation to the jury to concentrate on what the victim experienced and was thinking, and saying that "such argument could be considered error to the extent that it invites the jury to speculate on facts not in evidence"). But in the context of this case and the prosecutor's argument, the error is not as evident as the State concedes. The prosecutor was discussing the kidnaping offense, which charged that the defendant by force, threat or deception removed another or restrained their liberty. A threat that is sufficient to restrain one's liberty necessarily includes how the victim perceives the threat. Thus there is an arguable relationship between the kidnaping charge and the jury's ability to infer that the victim perceived the defendant's words as a threat sufficient to additionally restrain his liberty.

[*P89] Nevertheless, considering that the State concedes the argument was improper, the defendant must show, and we must evaluate, whether that argument prejudiced him. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Hill* (1996), 75 Ohio St.3d 195, 204, 1996 Ohio 222, 661 N.E.2d 1068. The defendant must show that absent the comment, the result would have been different. *State v. Loza* (1994), 71 Ohio St.3d 61, 78, 1994 Ohio 409, 641 N.E.2d 1082. Jones asserts that the trial court would have sustained an objection from defense counsel and likely would have given a curative instruction warning the jury against allowing sympathy for the victim or prejudice against Jones to influence its verdict. But, as the State points out, the trial court did later give such an instruction:

[*P90] "* * * You must not be influenced by any considerations of sympathy or prejudice. It's your duty to carefully weigh the

> evidence, to decide all disputed questions of fact, to apply these instructions of the Court to your fin[d]ings and to render your verdict accordingly.
>
> **[\*P91]** "In fulfilling this duty, your efforts must be to arrive at a just verdict. Consider all of the evidence and make your findings with intelligence and impartiality and without bias, sympathy or prejudice so that both the State of Ohio and the Defendant may both know that their case was fairly and impartially tried." (Tr. 542-543).
>
> **[\*P92]** "A trial jury is presumed to follow the instructions given to it by the judge." *State v. Henderson* (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237, citing *Parker v. Randolph* (1979), 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713. There is no evidence that the jury in this case did not follow the instruction. Therefore, given the context of the argument and the eventual instructions from the court, Jones fails to show prejudice from counsel's decision not to object.

*State v. Jones, supra*, at ¶¶ 13-92.  Once again, the court of appeals' decision on this sub-claim is neither contrary to nor and objectively unreasonable application of *Strickland v. Washington, supra.*  Assuming the trial judge had sustained an objection to the way these questions were worded and then instructed the jury to disregard what the witness had said about Jones' being in custody, the very instruction would have called attention to the fact of incarceration, exactly the point that the defense would not want to emphasize with the jury.  The court of appeals' comment on unwillingness to interrupt opposing counsel because of the way juries react to such interruptions is also well within reasonable conduct of a trial.  Finally, the trial court did give the instruction Petitioner claimed on appeal should have been given.

The third sub-claim is that trial counsel failed to file a motion to suppress.  This was also presented to the court of appeals as part of the first assignment of error.  It decided:

> **[\*P93]** The last of counsel's alleged failures was the failure to move for suppression of Jones's answers to pre-interview identification questions asking his name, address, date of birth, and social security number.

**[\*P94]** Detective C.W. Ritchey testified that Hicks gave him the picture of Jones that Hicks had printed from the Ohio Offender website, telling Ritchey that Jones was the one who robbed him. Ritchey testified that the name on the page with the picture was Robert L. Jones. Ritchey said that he then applied for an arrest warrant for Jones based on the information given to him by Hicks. The prosecutor was about to show Ritchey his report in order to refresh his memory about the exact date of Jones's arrest when defense counsel objected to Ritchey's identification of Jones. After a brief sidebar, the judge excused the jury from the courtroom and both parties presented their arguments. The prosecutor told the court that she was going to ask Ritchey, first, if the man he met matched the picture that Hicks had given him, and second, whether he asked Jones his name, date of birth, and social security number, which are written on a pre-interview form. The prosecutor said that she was then going to ask about what Ritchey learned of Jones's prior convictions and the name, date of birth, and social security number of the defendant in that case.

**[\*P95]** Defense counsel conceded that he did not file a pre-trial motion to suppress Jones's statements to Ritchey. Counsel explained that, during his preparation, he looked for any statements made by Jones that should be suppressed. He continued, "And in particular, I relied upon the following in the police report. Quote upon learning of the arrest of Jones, I made contact with him in an interview room. After going over his rights via the rights form, he declined to speak to me. End of quotation. And I have no other way to establish this except through the representation of counsel but that I do represent that the issue of his not making any statements was in fact covered with the Defendant during trial preparation." (Tr. 357-358). Counsel said that he did not believe a suppression motion was warranted or, at least, it did not appear that one was warranted then. The trial court sustained the objection. None of Jones's statements to Ritchey were admitted.

**[\*P96]** While conceding that the objection was sustained, Jones points out that the trial court gave no curative instruction, so the jury was left "to ponder and cumulate the fact that Willie Hicks had located Jones through his prison record and mugshot." Appellant's Brief, p.14. Because counsel did not move to suppress, says Jones, "the jury heard allegations and innuendo against Jones, which it should not have heard." Id.

**[\*P97]** We cannot say that counsel acted unreasonably by deciding not to file a pre-trial motion to suppress Jones's

13

> statements. Counsel did not appear to be aware of the statements or at least he did not expect the State to use them in the way that it sought to use them at trial. The answers to those same questions would otherwise be admissible, from a proper witness, as routine booking information. *Pennsylvania v. Muniz* (1990), 496 U.S. 582, 601, 110 S.Ct. 2638, 110 L.Ed.2d 528. Regardless, Jones plainly was not prejudiced—the jury heard none of his statements. Defense counsel's trial objection accomplished what a pre-trial suppression motion would not have accomplished. We note too that the damaging evidence that Jones says counsel should have moved to suppress is not really Ritchey's testimony concerning the detective's conversation with the defendant. It was Hicks's independent investigation, which Hicks himself testified about anyway, that led Ritchey to the defendant. Finally, Jones does not identify either the allegations or the innuendo that the jury heard because counsel did not move to suppress.
>
> **[\*P98]** Jones has not shown that any of counsel's conduct was both deficient and prejudicial. Therefore his ineffective-assistance claim must be rejected.

*State v. Jones, supra,* ¶¶ 93-98. It is simply not ineffective assistance of trial counsel to fail to file a motion to suppress under these circumstances.

Petitioner's First Ground for Relief is without merit because the court of appeals' decision on the ineffective assistance of trial counsel claim is neither contrary to nor an objectively unreasonable application of *Strickland v. Washington, supra*. Therefore the First Ground for Relief should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability on this Ground for Relief.

### Ground Two: Convictions Against the Manifest Weight of the Evidence

In his Second Ground for Relief, Petitioner asserts his convictions are against the manifest weight of the evidence.

14

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

A claim that a conviction is against the manifest weight of the evidence does not allege a violation of the United States Constitution. Under the Fourteenth Amendment, there must be sufficient evidence to sustain a conviction, but manifest weight review employs an entirely different standard. In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence. It held:

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established

> before them.  Weight is not a question of mathematics, but depends on its effect in inducing belief."  (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387.  In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader.  The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus.  The consequences of the distinction are important for a criminal defendant.  The State may retry a case reversed on the manifest weight of the evidence;  retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause.  *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

Because a manifest weight claim does not state a federal constitutional violation, Petitioner's Second Ground for Relief should be dismissed.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability on this

16

Ground for Relief.

### Ground Three:  Ineffective Assistance of Appellate Counsel

In his Third Ground for Relief, Petitioner asserts he received ineffective assistance of appellate counsel in that appellate counsel did not plead an assignment of error on insufficiency of the evidence.[1]  Ohio law provides only one mechanism for raising a claim of this sort, to wit, by application for reopening under Ohio R. App. P. 26(B) and Petitioner properly raised this claim in that manner.

The court of appeals rejected the ineffective assistance of appellate counsel claim by holding that the omitted assignment of error – insufficiency of the evidence – would not have been successful.  It held:

> Whether or not counsel should have challenged the sufficiency of the evidence, Jones fails to demonstrate a probability that such a challenge would have been successful.  "In reviewing a claim of insufficient evidence, the relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Bray*, 2d Dist. Clark App. No. 2010 CA 14, 2011-Ohio-4660, ¶ 39, citing State v. Britton, 181 Ohio App. 3d 415, 2009-Ohio-1262, 909 N.E. 2d 176, ¶ 13 (2d Dist.).  The jury that found Jones guilty likely did so based on the testimony of the victim himself, who recounted being held at gunpoint by Jones and his accomplices. Jones asserts that the victim's testimony was not enough. Physical evidence, says Jones, was needed – the gun, the stolen property, or other real evidence. Jones is incorrect. The State may rely on circumstantial evidence to prove an essential element of an offense. *State v. Jenks,* 61 Ohio St. 3d 259, 272-273, 574 N.E. 2d 492 (1991).The victim's testimony here is sufficient to prove the essential elements of the offenses Jones was convicted of, even those of the firearm specification, *see State v. Murphy*, 49 Ohio St. 3d 206, 551 N.E. 2d

---

[1] In pleading in this manner, Petitioner implicitly recognizes the distinction between a manifest weight claim and a sufficiency of the evidence claim made in deciding his Second Ground for Relief.

> 932 (1990), at the syllabus (holding that the State may prove the operability of a firearm "by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime"). Indeed, rejecting the challenge that appellate counsel brought to the evidence's manifest weight, we said that "the victim's testimony alone would be enough to support the jury's verdict." *Jones*, 2011-Ohio-5966, at ¶ 108.

*State v. Jones*, Case No. 24409, slip opinion at p. 2 (Ohio App. 2nd Dist. Apr. 23, 2012)(unreported, copy available on the website of the Montgomery County Clerk of Courts).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*. *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52).

Here the court of appeals held that raising the sufficiency of the evidence claim on direct appeal would not have made a difference in the outcome because the court, in deciding the manifest weight claim, had inferentially decided there was sufficient evidence. Federal courts

have reached the same conclusion. A state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.)

Because the Second District Court of Appeals applied the correct federal standard in a way that was not objectively unreasonable, its opinion on ineffective assistance of appellate counsel is entitled to deference from this Court. Therefore Petitioner's Third Ground for Relief is without merit and should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability on this Ground for Relief.

## Conclusion

Based on the foregoing analysis, the Petition herein should be dismissed with prejudice, Petitioner should be denied a certificate of appealability, and this Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

March 21, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).