# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ROBERT L. JONES,

        Petitioner,

ERNIE MOORE, Warden,
  Lebanon Correctional Institution,

        Respondent.

Case No. 3:13-cv-085

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on the Petition (Doc. No. 2), and Answer and state court record (Doc. Nos. 9, 10), and the Petitioner's Treverse [sic] (Doc. No. 12). The pleadings being complete, the case is ripe for decision.

Petitioner pleads three Grounds for Relief:

> **Ground One:** Ineffective Assistance of Trial Counsel (6th Amendment)
>
> **Supporting Facts:** Trial counsel failed to try weapons under disability count to the bench which deprive [sic] petitioner of Fair Trial. Trial counsel failed to object to Prosecutor's Misconduct. Trial counsel failed to file a timely motion to suppress.
>
> **Ground Two:** Convictions Are Against the Manifest Weight of the Evidence (6th Amendment)
>
> **Supporting Facts:** Victim-eyewitness testimony was inconsistant [sic] and unreliable, not crediable [sic]. All evidence not reliable or crediable [sic] regarding latent fingerprint evidence, expert testimony, and cell phone evidence. No evidence connects petitioner in any way to this issue, only allegations.

>**Ground Three:** Ineffective Assistance of Appellate Counsel
>
>**Supporting Facts*:* Appellate counsel failed to challenge the sufficiency of the evidence. The prosecution failed to prove every element of the charges against the petitioner in regards to all charges especially the aggravated robbery, aggravated burglary, weapons under disability, 3-year firearm specification.

(Petition, Doc. No. 2, PageID 25- 28.)

# Analysis

**Ground One:  Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Jones asserts he received ineffective assistance of trial counsel in that his trial attorney did not waive a jury trial on his weapons under disability charge, did not object to prosecutorial misconduct, and failed to timely file a motion to suppress.  This claim was raised on direct appeal and decided adversely to Jones.  He then failed to file a timely appeal to the Ohio Supreme Court.  On the basis of this failure, Respondent asserts this Ground for Relief is procedurally defaulted.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

>In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406

(6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir.); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>   . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Jones responds to the procedural default defense by claiming that the procedural rule in question – the forty-five day time limit on filing an appeal to the Ohio Supreme Court – is not an adequate and independent state ground of decision (Treverse [sic], Doc. No. 12, PageID 930). However, the Sixth Circuit has expressly held that time limit on appeal to Ohio Supreme Court is an adequate and independent state ground. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004)(citations omitted). Lack of counsel at that stage, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison do not establish cause to excuse this default. *Bonilla*, *citing Murray v. Carrier,* 477 U.S. 478, 494-95 (1986). Where a state court is entirely silent as to its reasons for denying requested relief, as when the Ohio Supreme Court denies leave to file a delayed appeal by form entry, the federal courts assume that the state court would have enforced any applicable procedural bar. *Bonilla,* 370 F.3d at 497, *citing Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

Petitioner relies on *Deitz v. Money*, 391 F.3d 804 (6th Cir. 2004), where the Sixth Circuit held that the rule regarding delayed appeals to the Ohio intermediate court of appeals was not an adequate and independent state ground of decision. Jones reasons that since the two rules are identically worded, one cannot be adequate and the other inadequate (Treverse [sic], Doc. No. 12, PageID 931). That does not necessarily follow: identically-worded rules might be differentially enforced by the different courts to which they apply and the Ohio Supreme Court has more need to restrict the number of delayed appeals it grants because it has many more such requests than the intermediate courts of appeals.

Moreover, the viability of *Deitz* as precedent has been undercut by later United States Supreme Court decisions holding that reservation of discretion in a state court rule to grant exceptions does not necessarily mean the rule is not adequate and independent. See *Beard v.*

4

*Kindler*, 558 U.S. 53, 54 (2009)("a discretionary rule can serve as an adequate ground to bar federal habeas review."); *Walker v. Martin*, 562 U.S. ___, 131 S. Ct. 1120 (2011)(California rule requires state habeas to be filed "as promptly as the circumstances allow" and without "substantial delay." The discretion this allows the California courts does not mean the rule is not firmly established and regularly followed.) The Sixth Circuit has expressly recognized that *Deitz* is no longer good law in light of these Supreme Court cases.

> *Beard* and *Walker*, when read together, permit a state procedural rule to serve as an adequate state ground for preventing review of a habeas petition  even if the state rule accords courts broad discretion. As a result of the Supreme Court's decision in *Walker, Deitz* is no longer the controlling law on this issue in our Circuit, and a petitioner's failure to follow Ohio Rule of Appellate Procedure 5(A) can serve as the basis for a procedural default of a petitioner's habeas claims.

*Stone v. Moore*, 644 F.3d 342, 348 (6th Cir. 2011).

Based on this analysis, the First Ground for Relief should be dismissed with prejudice.

**Ground Two:  Convictions Against the Manifest Weight of the Evidence**

In his Second Ground for Relief, Jones contends his convictions are against the manifest weight of the evidence presented.  As Respondent points out, the United States Constitution does not require that a conviction be supported by the manifest weight of the evidence; a claim that it is not thus supported does not state a claim for relief which is cognizable in habeas corpus. Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,*

5

463 U.S. 939 (1983).

Jones acknowledges that a manifest weight claim is not cognizable in habeas (Treverse [sic], Doc. No. 12, PageID 932). He counters, however, that a state court holding that a verdict is supported by "the manifest weight of the evidence implicitly also holds there is sufficient evidence." Based on that understanding, Jones asks the Court to construe his Second Ground for Relief as raising a sufficiency of the evidence claim. The Court is willing to do so without a formal motion to amend because there is no prejudice to Respondent and an amendment of this sort would sufficiently relate back to the original claim to avoid any bar of the statute of limitations.

The Supreme Court has elaborated on the standard of review of state court decisions on claims later raised in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To these ends, § 2254(d)(1) provides:
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."
>
> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406, 120 S. Ct.

6

> 1495.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408, 120 S.Ct. 1495.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495.  See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002).

> AEDPA  [the Antiterrorism and Effective Death Penalty Act of 1996] provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

8

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*).

A state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio 2011)(Merz, M.J.).

> While *Nash* is not a published opinion of the Sixth Circuit and therefore not binding precedent, the Magistrate Judge will follow it and (1) not find any procedural default from Hughes' limitation of his state court argument to manifest weight, (2) liberally construe the Petition as making a claim of insufficiency of the evidence and (3) read the state court of appeals' decision that the conviction was not against the manifest weight of the evidence as "necessarily impl[ying] a finding that [Hughes'] conviction was also supported by sufficient evidence." *Id.* at 762. See also *State v. Lee*, 158 Ohio App. 3d 129, 2004 Ohio 3946, 814 N.E.2d 112, 115 (Ohio App. 9th Dist. 2004), cited in *Nash* at 765.

*Hughes v. Warden*, 2011 U.S. Dist. LEXIS 54131(S.D. Ohio 2011.)

In denying Jones' weight of the evidence assignment of error, the Second District Court of Appeals wrote:

> **[\*P2]** On April 4, 2010, Willie Hicks was robbed and kidnapped at gun-point from his Dayton home. When Hicks walked up to the door of his apartment building, in the early morning hours, a man with a bandana covering his mouth ran up behind him and pressed a gun to the back of Hicks's head. When the two went inside the building, Hicks saw another man wearing a ski mask. The three men entered Hicks's apartment, and the two assailants ransacked the premises, taking money and objects. They repeatedly demanded Hicks's drugs and money. The assailants then forced Hicks outside and into the backseat of his car, where they told him to lay face down. The two assailants got in the front, and they drove to a desolate area nearby. A third person followed in another car.
>
> **[\*P3]** Hicks owned a truck, which he kept at a storage facility in

Drexel, Ohio (just outside Dayton). The assailants demanded to know where the truck was. Hicks lied and told them it was parked inside a Dayton storage facility on Third Street. At that facility, the assailants could not open the locked gate. Hicks told them that the access code was written on a slip of paper that was either in his car or back at his apartment. After the assailants ransacked Hicks's car looking for the paper, they locked Hicks in the trunk while two of them went back to search his apartment. When the two returned without finding the paper, Hicks heard one of them say, "'I been [sic] locked up.' * * * 'I just got out. You know I got out from doing seven years, so I know what I'm doing.'" (Tr. 143). He then heard the same one say, "'He playing [sic] too much. Let's kill him.'" (Tr. 144). The trunk opened and Hicks saw the man wearing the bandana pointing a gun at him. Hicks quickly agreed to take the men to the place he stored the money, his cousin's house. Hicks was lying again.

**[*P4]** They all piled into Hicks's car with Hicks in the driver's seat and the bandana wearing man in the passenger seat pressing the gun into Hicks's ribs. While he was driving, Hicks told the man that riding in the car with his face half covered was a sure way to get stopped by the police. The man pulled the bandana down. Hicks did not recognize the man at the time, but later learned that his name was Robert Jones.

**[*P5]** When they arrived at Hicks's cousin's house, Hicks told Jones that he needed a phone to call his cousin to let him know he was outside. Jones gave Hicks his cell phone. Hicks told his cousin, Pete Smith, that he needed the keys to the safe. Smith, of course, had no idea what Hicks was talking about. After Smith hung up, he checked the monitors connected to the security-system cameras installed on his house. Smith saw Jones pull his bandana back up and then push Hicks toward the house with a gun pressed into his back. Smith's wife called the police. When a police cruiser pulled up, Jones bolted. Hicks still had Jones's cell phone.

**[*P6]** The next day, Hicks began his own investigation. He obtained the cell phone number using the caller-ID feature on Smith's home phone. Hicks used the number to obtain from the service provider the name on the service account, which was Jones's. Remembering what he overheard Jones say, Hicks then searched an online database of offenders, available on the Ohio Department of Rehabilitation and Corrections's website. He immediately recognized the photo of the fourth offender listed. Hicks printed out the photo and gave it to police, telling them that it was the man they were looking for.

10

**[\*P7]** The police department's own investigation corroborated Hicks's findings. Police confirmed that the cell phone was Jones's and that Jones had been convicted for aggravated robbery, felonious assault, and kidnaping. Police also found one of Jones's palm prints and one of his fingerprints on the trunk of Hicks's car.

\* \* \*

**[\*P102]** Jones asserts that Hicks gave conflicting testimony about the condition of his second bedroom. At the preliminary hearing, he testified that his assailants did not search it, but at trial, Hicks testified that they did. Jones also says that Hicks gave conflicting testimony about which assailants had guns. At the preliminary hearing, Hicks testified that only Jones had a gun, but at trial, he testified that one of Jones's accomplices also had a gun. According to Jones, Hicks further gave conflicting testimony about what part of Jones's face the bandana covered. At the preliminary hearing, Hicks said that Jones's bandana covered his nose, but at trial, Hicks testified that the bandana was below his nose. Finally, Jones points to Hick's preliminary-hearing testimony describing Jones's gun as a black 9-millimeter semiautomatic. At trial Hicks described the gun as a silver or chrome revolver.

**[\*P103]** Only Hicks's trial testimony was evidence. Hicks's trial testimony itself was not conflicting or inconsistent. Rather, Jones points to instances on cross examination where defense counsel challenged Hicks's credibility with inconsistent preliminary-hearing statements. The jury had to decide the extent to which it would credit Hicks's testimony. It is not patently apparent that the jury lost its way by deciding to believe Hicks's testimony on the critical matters.

**[\*P104]** Jones also contends that the police testimony about the prints found on Hicks's car was inconsistent. We disagree.

**[\*P105]** John Malott, a police crime-scene investigator, testified that he found prints on Hicks's car's hood, interior door-frame, and trunk. He testified that on the trunk he found a palm print and partial fingerprints. Carl Steele, the Montgomery County Sheriff's Office corrections officer who fingerprints and photographs inmates, explained that AFIS, an automated fingerprint identification system, stores images of fingerprints and palm prints in a database. Steele testified that palm prints are first taken with actual ink and later scanned into AFIS but fingerprints are scanned

directly into the system. Steele testified that he fingerprinted Jones this time and when Jones was arrested back in 2000.

[*P106] Ronald Swank, a Dayton police officer assigned to the Bureau of Identification, testified as the State's expert in the field of fingerprint and palm print examination and comparison.

[*P107] Swank testified that he reviewed the latent print cards that Malott submitted. Swank found that only one fingerprint and two palm prints had any evidentiary value, and he ran them through AFIS. Swank explained that AFIS does not itself make a match. Rather, it returns what it concludes are the best candidates for a match. The user then has to manually compare the candidates to the subject print. Swank testified that on two palm prints and the fingerprint, the number one candidate was Robert Jones. Swank obtained Jones's 2000 fingerprint card and compared the palm and finger prints found on Hicks's trunk to it. He concluded that one palm print was Jones's and that the fingerprint was Jones's too. Another officer then reviewed Swank's work as part of an established peer-review process.

[*P108] We find that the fingerprint testimony is consistent and coherent. We note that, even if we had concluded that the jury should not have credited any of it, Hicks's testimony alone would be enough to support the jury's verdict.

[*P109] The second assignment of error is overruled.

*State v. Jones*, 2011-Ohio-5966, 2011 Ohio App. LEXIS 4880, ¶¶ 3-7, 102-09 (2nd Dist. Nov. 18, 2011).

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).

Jones makes no argument why the evidence recited by the Second District Court of

Appeals is not sufficient for conviction. Because the conclusion of the state court is entitled to deference under 28 U.S.C. § 2254(d)(1) and (2), the Second Ground for Relief should be dismissed with prejudice.

**Ground Three: Ineffective Assistance of Appellate Counsel**

Jones asserts his appellate attorney was ineffective for failure to raise a sufficiency of the evidence assignment of error on direct appeal. Jones raised this claim in his Application for Reopening under Ohio R. App. P. 26(B) and the Second District denied it on the merits. *State v. Jones*, Case No. 24409 (Ohio App. 2nd Dist. Apr. 23, 2012)(unreported; copy at Doc. No. 9-1, PageID 274-76). That court held:

> Whether or not counsel should have challenged the sufficiency of the evidence, Jones falls to demonstrate a probability that such a challenge would have been successful. "In reviewing a claim of insufficient evidence, the relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Bray*, 2d Dist. Clark App. No. 2010 CA 14, 2011-0hio-4660, 1]39, citing *State v. Britton*, 181 Ohio App.3d 415, 2009-0hio-1282, 909 N.E.2d 176, 1]13 (2d Dist.). The jury that found Jones guilty likely did so based on the testimony of the victim himself, who recounted being held at gunpoint by Jones and his accomplices. Jones asserts that the victim's testimony was not enough. Physical evidence, says Jones, was needed-the gun, the stolen property, or other real evidence. Jones is incorrect. The state may rely on circumstantial evidence to prove an essential element of an offense. *State v. Jenks*, 61 Ohio St. 3d 259, 272-273, 574 N.E.2d 492 (1991). The victim's testimony here is sufficient to prove the essential elements of the offenses Jones was convicted of, even those of the firearm specification, *see State v. Murphy*, 49 Ohio St. 3d 206, 551 N.E.2d 932 (1990), at the syllabus (holding that the state may prove the operability of a firearm "by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime"). Indeed, rejecting the challenge that

13

> appellate counsel brought to the evidence's manifest weight, we said that "[the victim's] testimony alone would be enough to support the jury's verdict." *Jones*, 2011-Ohio-5966, at ¶ 108.

*Id.*, PageID 275.

While a criminal defendant is entitled to effective assistance of counsel on his first appeal of right, to evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52).

Here the very court which would have had to decide a sufficiency of the evidence claim if it had been raised decided that such a claim would not have been likely to succeed. As it noted, the manifest weight of the evidence assignment of error, which places a lesser burden on an appealing defendant, was not satisfied in this case. *A fortiori*, the higher burden of showing an insufficiency of the evidence claim would not have been successful.

It is neither deficient performance nor prejudicial to fail to make an argument which would not have succeeded. The Second District applied the standard required by Supreme Court

14

precedent and its application was not objectively unreasonable.  Therefore the Third Ground for Relief should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

November 12, 2013.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).